JOURNAL ENTRY AND OPINION
Plaintiff-appellant Westbrook Technologies, Inc. (Westbrook) appeals from the findings of fact and conclusions of law adopted by the trial court in favor of defendant-appellee City Blue Printing Company ("City Blue") following a bench trial. For the reasons that follow, we affirm the judgment below.
Westbrook's business involves the development, sale and servicing of computer software, including software known as "Fortis" and "C.D. Express". On November 24, 1999, Westbrook commenced an action against City Blue asserting claims for breach of contract and unjust enrichment. Westbrook alleged that City Blue "ordered from Westbrook certain goods, materials, installation of goods and materials, and educational training set forth more fully in Purchase Order No. GE981-286" a copy of which Westbrook attached to its complaint. Although the purchase order contains two lines for signature, both are blank. City Blue contends that its former employee, Christopher Strang, "created" this unauthorized document because it is not a City Blue form.[1]
In addition to the purchase order, the record consistently reflects that Westbrook dealt exclusively with Christopher Strang in regard to the order/sale of the Westbrook software. At times pertinent to this case, City Blue employed Strang as a production employee along with the majority of its employees. Westbrook directed all correspondence and forms related to the order/sale of its software to the attention of Strang. The documents presented at trial regarding technical support provided by Westbrook all reflect Strang as the contact person. Westbrook admits that it never inquired and/or otherwise verified Strang's authority to order software on behalf of City Blue.
After Westbrook traveled to Ohio and trained Strang, Westbrook invoiced City Blue for products, services and attendant travel costs totaling $14,823.76. The unrefuted evidence establishes that Strang had no authority to enter contracts of this type or magnitude. Several witnesses testified that City Blue's president had the sole authority to approve purchases over $500 and detailed the purchase procedure in place to ensure her exclusive authority in this realm. In fact, the accounts department flagged the purchase requisition form for the software as being on a form inappropriate for a purchase in the $10,740 amount reflected thereon.
Westbrook contends, however, that the then Chief Operating Officer, Dib Bhattacharyya (Dib), had authority to direct Strang to place the order and bind City Blue to payment. Beyond the speculation of one witness, there is no documentary evidence in the record that would link Dib to Strang's order of this software. Neither Strang nor Dib testified at trial.
City Blue first learned that Strang had ordered the software in the midst of terminating Strang for allegedly conspiring against City Blue with other employees, including Dib. Upon their departure from City Blue, Dib and Strang did, in fact, open a business and purchased the same software from Westbrook. In a separate action, City Blue filed a lawsuit against Dib for his illegal and unauthorized actions.
Upon locating the software, City Blue determined that it had no application to its business and returned the box and its contents to Westbrook with a letter explaining the unauthorized order. Westbrook returned the shipment to City Blue unopened. There was no evidence presented that would suggest that City Blue ever used Westbrook's software in its business.
The trial court rendered judgment in favor of City Blue finding that City Blue never accepted the software and that Westbrook failed to establish the requisite elements for breach of contract or unjust enrichment. Westbrook assigns the following error for our review:
 I. THE JUDGMENT OF THE TRIAL COURT IS AGAINST THE WEIGHT OF THE EVIDENCE.
Reviewing a claim that the judgment was against the manifest weight of the evidence, we employ the following standard:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
Alba Contractors, Inc. v. Shane (Nov. 30, 2000), Cuyahoga App. No. 77595, unreported, quoting State v. Martin (1983), 20 Ohio App.3d 172. Additionally, it is "well settled that `judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.'" Id. quoting C.E. Morris Co. v. FoleyConstruction Co. (1978), 54 Ohio St.2d 279 (syllabus).
In a bench trial the court assumes the fact finding function of the jury. Accordingly, to warrant reversal from a bench trial under a manifest weight of the evidence claim, it must be determined that the court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. We are mindful that due deference must be accorded the findings of the trial court because "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
In this case, the findings of fact and conclusions of law are supported by both competent and credible evidence in the record. Based on the evidence presented, the court found that no binding contract existed between City Blue and Westbrook.[2] This is supported by the evidence suggesting that the purchase order is a bogus document. The purchase order was incomplete on its face having blank signature lines and lacking any indicia of authorization.
Although Westbrook urges us to find that Dib had authority to enter a contract binding upon City Blue, the evidence weighs heavily in favor of the Court's finding that Westbrook dealt exclusively with Strang. Specifically, there are no documents or any other tangible evidence indicating that Dib approved or authorized or otherwise directed Strang to order the software. While this fact essentially renders Dib's apparent or actual authority irrelevant to this case, the court's findings that Dib lacked the requisite authority are likewise supported by competent and credible evidence in the record.
"`Express authority is that which is directly granted to or conferred upon the agent or employee in express terms by the principle, and it extends only to such powers as the principle gives the agent in direct terms; and the express provisions are controlling where the agency is expressly conferred.'" Master Consolidated Corp. v. BancOhio Natl. Bank
(1991), 61 Ohio St.3d 570, 574, quoting, Stevens v. Frost (1943),140 Me. 1, 7, 32 A.2d 164, 168. To establish apparent authority, the evidence must show either that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question or knowingly permitted him to act as having such authority. Id. at 576-577 (other citations omitted). Additionally, the evidence must show that the person dealing with the agent knew of the facts and, acting in good faith, had reason to believe and did believe that the agent possessed the necessary authority. Id. "The apparent power of an agent is to be determined by the act of the principal and not by the acts of the agent." Id.
City Blue presented evidence at trial that Dib had no express authority to enter contracts for purchase of this software but rather was hired as a consultant to improve the financial condition of the company. Through testimony and documents, City Blue presented evidence of its established purchasing procedure and the president's exclusive authority to approve purchase in excess of $500. Westbrook relies upon the answers to interrogatories that indicate that Dib had authority to order the software. In response, City Blue presented testimonial and documentary evidence that contradicted that fact and otherwise qualified the discovery response.
Likewise, Westbrook and City Blue presented conflicting testimony on the issue of Dib's apparent authority. Despite the conflicts, there is no documentary evidence and scant testimony that would even suggest that Westbrook dealt with Dib in this transaction. And, Westbrook concedes that it did nothing to verify Strang's authority. Accordingly, we cannot say that the court clearly lost its way in resolving this factual conflict in favor of City Blue.
The record supports the trial court's findings that City Blue never accepted the software and/or rightfully rejected it upon discovery. As set forth above, there is no evidence of an enforceable contract between City Blue and Westbrook for this software. The record contains testimony that immediately upon discovering the software, City Blue determined that the Fortis and C.D. Express products have little, if any, useful application to the services it provides to its customers. Accordingly, Westbrook's claims under R.C. 1302, et seq. are without merit.
Similarly, the trial court's judgment concerning the claim of quantummeruit is not against the manifest weight of the evidence. "Quantummeruit is generally awarded when one party confers some benefit upon another without receiving just compensation for the reasonable value of services rendered". Aultman Hospital Asso. v. Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51, 55. The trial court found, based upon the evidence presented, that "the software at issue in this case has never been applicable to the business of City Blue". Further, the court accepted City Blue's evidence that it had no application for the software and attempted to return it immediately upon its discovery. Westbrook presented no evidence that City Blue ever utilized this software for its customers or in its business. Therefore, the trial court had substantial evidence to support its findings and judgment.
Based on the foregoing, the remaining issues pertaining to the trial court's findings and judgment concerning Westbrook's claims for lost profit and prejudgment interest are without merit.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, P.J., and FRANK D. CELEBREZZE, JR., J., CONCUR.
[1] City Blue also points out that the purchase order identifies a "City Blueprinting" as the purchaser rather than City Blue Printing Company.
[2] A contract is created `where there is an offer by one side, acceptance on the part of the other, and a meeting of the minds as to the essential terms of the agreement.' McCarthy, Lebit, Crystal HaimanCo., L.P.A. v. First Union Management, Inc. (1993), 87 Ohio App.3d 613,620, 622 N.E.2d 1093. A contract is not created unless the parties communicate to one another `a distinct and common intention' to create a binding obligation. Id." Campanella v. Commerce Exch. Bank (2000),139 Ohio App.3d 796, 806.